IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| V. | * | CRIMINAL NO. W-19-CR-258(6) |
| | * | |
| CARLINE STONE BOLDING | * | |

## FACTUAL BASIS

Had this case proceeded to trial, the United States Attorney for the Western District of Texas was prepared to prove and would prove beyond a reasonable doubt that:

Beginning in or about November, 2017, the exact date unknown to the Grand Jury, and continuing until the present time, in the Western District of Texas and elsewhere, Defendant,

**CARLINE STONE BOLDING.**

did unlawfully, knowingly and intentionally combine, conspire, confederate an agree together and with each other and others, to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, that is to say, they conspired to possess with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of Methamphetamine, a Schedule II Controlled Substance, contrary to Title 21, United States Code, Section 841(a)(1).

**QUANTITY OF CONTROLLED SUBSTANCE INVOLVED IN THE CONSPIRACY**

The quantity of the mixture or substance containing Methamphetamine involved in the conspiracy and attributable to each Defendant as a result of each Defendant's own conduct and as a result of the conduct of other conspirators reasonably foreseeable to each Defendant is as follows:

| DEFENDANT | QUANTITY | STATUTE |
|---|---|---|
| CARLINE STONE BOLDING (6) | At least 500 grams | 21 U.S.C. § 841(b)(1)(A)(viii) |

All in violation of Title 21, United States Code, Section 846.

Specifically, the United States Attorney would prove beyond a reasonable doubt that:

In 2018, the Waco FBI office, DPS, DEA, and the WPD undertook the investigation of an organization in central Texas that was distributing multi-kilogram quantities of methamphetamine. That investigation included the court-authorized interception of the telephone of **MARTIN ZUNIGA, JR**. and the interception of the Facebook Accounts of **XAVIER ANGELO HERNANDEZ** and **STEVEN MATTHEW OCHOA**. Through the interceptions, law enforcement was able to identify others involved, including, but not limited to: **JULIO CESAR CRUZ, GASPAR SARDANETA MARTINEZ, CARLINE STONE BOLDING, CHERYL ANN FLANAGAN, SABRINA MARIA SARDANETA** and **DALIA RAQUEL ESTRADA GONZALEZ ROBINSON.** Most of the overt acts of this conspiracy occurred within the Waco Division of the Western District of Texas.

**XAVIER ANGELO HERNANDEZ – HERNANDEZ** was the local methamphetamine and gun supplier in the Waco area. An undercover officer ("UC") conducted multiple controlled purchases of methamphetamine from **CRUZ**. In each instances, agents saw **CRUZ** meet with either **HERNANDEZ** or **HERNANDEZ** and **ZUNIGA** just prior to **CRUZ** providing methamphetamine to the UC. Social media accounts associated with **HERNANDEZ** reveal multiple postings displaying marijuana, money and at least five (5) different firearms. Agents have also identified **OCHOA** as **HERNANDEZ'** primary methamphetamine supplier. Agents have identified multiple money wires that **HERNANDEZ** has sent at the direction of **OCHOA** to individuals in the Republic of Mexico. In March 2019, after intercepts and surveillance, agents

executed a search warrant on a vehicle in which they had observed **HERNANDEZ** and **MARTINEZ** depositing plastic bags that appeared to contain packages in a vehicle. During the execution of the search warrant, officers located over 700 grams of methamphetamine and 40 THC pens. Agents have identified numerous money wires sent to the Republic of Mexico from **HERNANDEZ, OCHOA** and **OCHOA'S** paramour, MALLORY ORDONES. These wire transfers are in the thousands of dollars.

**STEVEN MATTHEW OCHOA –OCHOA** is the primary methamphetamine supplier to **HERNANDEZ**. Agents intercepted numerous conversations between **HERNANDEZ** and **OCHOA** regarding ½ kilo and kilo amounts of methamphetamine. Agents have tracked him several times to Terrell, Texas meeting with a person believed to be his supplier. In late August 2019, he was stopped with 3.5 kilos of cocaine. A search warrant was then executed at his residence where agents located another ½ kilo of cocaine, $16k+ in cash and a large commercial size money counter. He supplied at least 500 grams of methamphemtaine throughout the investigation of the conspiracy.

**JULIO CESAR CRUZ** – **CRUZ** was a methamphetamine distributor for **HERNANDEZ**. The CI involved in this investigation introduced a UC to **CRUZ**, who then began dealing directly with **CRUZ**. The UC purchased at least 500 grams of methamphetamine from **CRUZ** over several months. On most of those buys, **CRUZ** would meet with **HERNANDEZ** or **HERNANDEZ** and **ZUNIGA** prior to the buys taking place. He also referred to having to pick up from his supplier prior to meeting with the UC. During many of the buys, his girlfriend, **DALIA RAQUEL ESTRADA GONZALEZ ROBINSON**, was present. She

explained to the UC that she and **CRUZ** had their own customer base to whom they supplied methamphetamine.

**MARTIN ZUNIGA, JR.** – **ZUNIGA** was a sort of "partner" to **HERNANDEZ**. On numerous occasions when the UC was dealing with **CRUZ** for the purpose of purchasing methamphetamine, surveillance would see **ZUNIGA** and **HERNANDEZ** in the area. **CRUZ** always met with either or both of them, both before and after the deal. During the investigation, law enforcement was monitoring the social media accounts of several of the targets, including **HERNANDEZ**. After one such deal, **HERNANDEZ** posted on his account that he "loved getting paid" along with a picture of him and **ZUNIGA** counting money in the vehicle that surveillance had observed them in during the UC buy. In addition, there are numerous Facebook intercepts with him and others, usually **HERNANDEZ**, discussing the trafficking of methamphetamine and the exchange of money. He is responsible for the distribution of at least 500 grams of methamphetamine.

**GASPAR SARDANETA MARTINEZ** – **MARTINEZ** was also a distributor of methamphetamine for **HERNANDEZ.** In late June 2019, **MARTINEZ** was involved in a high-speed pursuit with WPD after officers observed what they believed to be a gunshot coming from **MARTINEZ'** vehicle. The pursuit terminated near his residence. Officers did not find a gun, but did notice a vehicle that had been they recognized from this investigation in the area where the pursuit terminated. During a search of his vehicle, officers located about an ounce of methamphetamine and 60 THC pens. After this arrest, agents intercepted numerous conversations about **MARTINEZ**' arrest, whom **HERNANDEZ** referred to as 'cousin', and **HERNANDEZ** and **ZUNIGA** expressing their concern that **MARTINEZ** might "talk". Based on

agents' review of the intercepts, **MARTINEZ** is responsible for the distribution of at least 500 grams of methamphetamine.

**CARLINE STONE BOLDING** – **BOLDING** was also a distributor of methamphetamine for **HERNANDEZ**. Based on intercepts and surveillance, **BOLDING** was a frequent customer of **HERNANDEZ**, buying at least 500 grams. In May 2019, she was stopped by the MCSO and found with approximately one (1) ounce of methamphetamine. Investigatoin revealed that she had been obtaining methamphetamine and marijuana from **HERNANDEZ** on a weekly basis for the previous two years. Agents believe that she obtained three (3) ounces weekly from **HERNANDEZ** for the last year and a half. Based on the investigation, **BOLDING** is responsible for the distribution of at least 500 grams of methamphetamine.

**CHERYL ANN FLANAGAN** – **FLANAGAN** is another methamphetamine distributor for **HERNANDEZ**. Law enforcement has conducted several small controlled buys using a CI from her. Agents have intercepted numerous conversations between **FLANAGAN** and **HERNANDEZ** where she is getting ounce and multi ounce amounts of methamphetamine from him, both on a weekly basis and several times in a week throughout the course of the interceptions. Agents also intercepted a picture of a shotgun that she sent to **HERNANDEZ**, asking if he wanted it (in exchange for dope) because "people always give me these". Based on the Agent's analysis of the interceptions, she is responsible for the distribution of at least 500 grams of methamphetamine.

**SABRINA MARIA SARDANETA – SARDANETA** is a cousin to **HERNANDEZ**. Based on the phone intercepts, **HERNANDEZ** stored methamphetamine at her residence in Waco. Agents also intercepted conversations wherein **HERNANDEZ** would send his

distributors to her home in order to pick up ounces of methamphetamine from **SARDANETA**. In one phone intercept, **HERNANDEZ** instructs **GASPAR MARTINEZ** to go to **SARDANETA'S** residence to retrieve three (3) ounces of methamphetamine. He also instructed **SARDANETA** to give the methamphetamine to **MARTINEZ** when he arrived. Agents also conducted surveillance of **HERNANDEZ** and **SARDANETA** after phone intercepts indicated they would be meeting for **SARDANETA** to bring the rest of the methamphetamine that had been stored at her residence to **HERNANDEZ.** She is responsible for the distribution of at least 50 grams of methamphetamine.

**DALIA RAQUEL ESTRADA GONZALES ROBINSON – ROBINSON** was the Paramour of **CRUZ.** During the UC buys of methamphetamine from **CRUZ, ROBINSON** was present on almost all of the buys. She explained to the UC that she and **CRUZ** had their own customer base to whom they supplied methamphetamine. Based on her participation in the buys between **CRUZ** and the UC, and her description to the UC of how much 'they' (she and **CRUZ**) were selling, she is responsible for the distribution of at least 50 grams of methamphetamine.

Defendant admits that the facts set out in the Factual Basis establish a nexus between the property sought for forfeiture and the criminal offense. Thus, the Defendant agrees that the property is forfeitable to the United States, as proceeds of the criminal offense, or as property facilitating the commission of the criminal offense, or as property involved in the criminal offense.

    Respectfully submitted,

    JOHN F. BASH
    United States Attorney

    /s/ *Stephanie Smith-Burris*

    STEPHANIE SMITH-BURRIS
    Assistant United States Attorney