UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

UNITED STATES OF AMERICA ) Docket No. WA 19-CR-258(6) ADA
                         )
vs.                      ) Waco, Texas
                         )
CARLINE STONE BOLDING    ) March 3, 2020

TRANSCRIPT OF REARRAIGNMENT/PLEA
BEFORE THE HONORABLE JEFFREY C. MANSKE

APPEARANCES:

For the United States:     Ms. Stephanie Smith-Burris
                           Assistant U.S. Attorney
                           800 Franklin Avenue, Suite 280
                           Waco, Texas 76701


For the Defendant:         Mr. Chris Bullajian
                           Law Office of Chris Bullajian
                           210 North 6th Street
                           Waco, Texas 76701


Transcriber:               Ms. Lily Iva Reznik, CRR, RMR
                           501 West 5th Street, Suite 4153
                           Austin, Texas 78701
                           (512)391-8792

Proceedings reported by digital sound recording,
transcript produced by computer aided-transcription.

1          (Proceedings commence at 9:36 a.m.)

2          THE CLERK:  Case No. W-19-CR-334, Defendant No.

3  2, The United States of America vs. Jeremy Leon Ornelas.

4          MS. SMITH-BURRIS:  Stephanie Smith-Burris for the

5  government for this case and all cases called for pleas

6  today.

7          THE COURT:  Thank you, Ms. Smith-Burris.

8          MS. SMITH-BURRIS:  Yes, sir.

9          MR. PETERSON:  Scott Peterson on behalf of Mr.

10 Ornelas.

11         THE COURT:  Hello, Mr. Peterson.

12         THE CLERK:  Case No. W-20-CR-04, The United

13 States of America vs. Stevie Defrando Buckner, Jr.

14         MR. YOUNG:  Doyle Young for Mr. Buckner, your

15 Honor.

16         THE COURT:  Hello, Mr. Young.

17         THE CLERK:  Case No. W-19-CR-338, Defendant No.

18 2, The United States of America vs. William Ryan James.

19         MR. HUNT:  Russell Hunt, Jr. for Mr. James.

20         THE COURT:  Hello.  How are you?

21         MR. HUNT:  Good morning, your Honor.

22         THE CLERK:  Case No. W-19-CR-338, Defendant No.

23 5, The United States of America vs. Trent Michael Freeman.

24         MR. CRAWFORD:  Michael J. Crawford here for Trent

25 Freeman.

| | |
|---|---|
| 1 | THE COURT:  All right.  Thank you, Mr. Crawford. |
| 2 | MR. CRAWFORD:  Thank you. |
| 3 | THE CLERK:  Case No. W-19-CR-338, Defendant No. |
| 4 | 1, The United States of America vs. Lucas James Tighe. |
| 5 | MS. DIAZ:  Sharon Diaz here for Mr. Tighe. |
| 6 | THE COURT:  Good morning, Ms. Diaz. |
| 7 | MS. DIAZ:  Good morning. |
| 8 | THE CLERK:  Case No. W-19-CR-264, Defendant No. |
| 9 | 1, The United States of America vs. Gary Dalton Middleton. |
| 10 | MR. MACLEMORE:  Dan MacLemore for Mr. Middleton. |
| 11 | Good morning, Judge. |
| 12 | THE COURT:  Good morning.  How are you, sir? |
| 13 | MR. MACLEMORE:  Doing very well.  How about |
| 14 | yourself? |
| 15 | THE COURT:  Good.  Good. |
| 16 | THE CLERK:  Case No. W-19-CR-328, Defendant No. |
| 17 | 1.  The United States of America vs. Cassie Francis Gooch. |
| 18 | MR. MCCLINTON:  Matthew McClinton for Ms. Gooch, |
| 19 | your Honor. |
| 20 | THE COURT:  Hello, Mr. McClinton.  How are you |
| 21 | doing? |
| 22 | MR. MCCLINTON:  Good morning. |
| 23 | THE CLERK:  Case No. W-19-CR-258, Defendant No. |
| 24 | 6, The United States of America vs. Carline Stone Bolding. |
| 25 | MR. BULLAJIAN:  Chris Bullajian for Ms. Bolding. |

1    THE COURT:  Hello, Mr. Bullajian.  How are you?

2    MR. BULLAJIAN:  Good.

3    THE COURT:  Good.

4    THE CLERK:  Case No. W-20-CR-7, Defendant No. 1,

5    The United States of America vs. Abdiel Dominguez.

6    MR. BOYD:  Good morning, your Honor.

7    Zachary Boyd for Mr. Dominguez.

8    THE COURT:  Good morning, Mr. Boyd.  How are you

9    doing?

10    MR. BOYD:  Great.

11    THE COURT:  Good.

12    THE CLERK:  Case No. W-20-CR-15, Defendant No. 1,

13    The United States of America vs. Luis Montalvo-Guzman.

14    MR. MARTINEZ:  Phil Martinez for Mr.

15    Montalvo-Guzman, your Honor.

16    THE COURT:  Good morning, Mr. Martinez.

17    MR. MARTINEZ:  Good morning.

18    THE CLERK:  All cases called for felony

19    rearraignment.  If each of the defendants would please

20    raise your right hand.

21    Do each of you solemnly swear that the statements

22    which you may give in the case now before the Court shall

23    be the truth, the whole truth, and nothing but the truth,

24    so help you God?

25    (Affirmative responses given.)

1      THE COURT:  All right.  Good morning, everyone.

2      Beginning Mr. Ornelas, I would like for each of

3 you to state your full name, first, middle and last, for

4 the record, then tell me how old you are and, finally, how

5 far you went in school.

6      Mr. Ornelas.

7      DEFENDANT ORNELAS:  Jeremy Leon Ornelas.  I made

8 it to eleventh grade.  I got a GED and I'm 44 years old.

9      THE COURT:  All right.  Very good.

10      Mr. Buckner.

11      DEFENDANT BUCKNER:  Stevie um -- Buckner --

12      MR. YOUNG:  Mr. Buckner has a speech impediment

13 that causes him to take a little bit of time.

14      THE COURT:  That's fine.  Take your time.  No

15 rush.

16      DEFENDANT BUCKNER:  Defrando and I'm 30 years

17 old -- 36.

18      THE COURT:  All right.  Did you graduate twelfth

19 grade?

20      DEFENDANT BUCKNER:  No, sir.

21      THE COURT:  Do you have a GED?  All right.  Let

22 the record reflect, he should have said no.  Thank you.

23      Mr. James.

24      DEFENDANT JAMES:  William Ryan James, 36 years

25 old, GED.

1      THE COURT:  Thank you.  Last grade completed?

2      DEFENDANT JAMES:  Tenth grade.

3      THE COURT:  Thank you.

4      Mr. Freeman.

5      DEFENDANT FREEMAN:  Trent Michael Freeman, 37

6  years old.  I have a diploma, twelfth grade.

7      THE COURT:  All right.  Thank you.

8      Mr. Tighe.

9      DEFENDANT TIGHE:  Lucas James Tighe, 37 years

10  old.  I completed tenth grade and got my GED.

11      THE COURT:  Thank you.

12      Mr. Middleton.

13      DEFENDANT MIDDLETON:  Gary Dalton Middleton, 32

14  and twelfth grade, some college.

15      THE COURT:  Thank you.

16      Ms. Gooch.

17      DEFENDANT GOOCH:  Cassie Frances Gooch.  I'm 34

18  and I have my high school diploma; so twelfth grade.

19      THE COURT:  All right.  Thank you.

20      Ms. Bolding.

21      DEFENDANT BOLDING:  Carline Stone Bolding, 49.  I

22  completed ninth and received my GED.

23      THE COURT:  Thank you, ma'am.

24      Mr. Dominguez.

25      DEFENDANT DOMINGUEZ:  Abdiel Dominguez.  I'm 27

1  years old, high school diploma and business administration

2  certificate.

3          MR. BOYD:  Your Honor, even though the Court

4  records indicate he needs an interpreter, obviously he

5  understands English.

6          THE COURT:  All right.  Very good.  Thank you.

7          Mr. Montalvo.

8          DEFENDANT MONTALVO-GUZMAN:  Luis Montalvo-Guzman.

9  I am 34 years old, fifth grade.

10          THE COURT:  Can you read or write the Spanish

11  language?

12          DEFENDANT MONTALVO-GUZMAN:  Yes.

13          THE COURT:  Thank you.

14          Do any of you folks suffer from any physical or

15  mental condition that might affect your ability to

16  understand why you're here in court this morning?  Mr.

17  Ornelas?

18          DEFENDANT ORNELAS:  No, sir.

19          THE COURT:  Mr. Buckner?

20          DEFENDANT BUCKNER:  No, sir.

21          THE COURT:  Mr. James?

22          DEFENDANT JAMES:  No, sir.

23          THE COURT:  Mr. Freeman?

24          DEFENDANT FREEMAN:  No, sir.

25          THE COURT:  Mr. Tighe?

```
1            DEFENDANT TIGHE:  No, sir.

2            THE COURT:  Mr. Middleton?

3            DEFENDANT MIDDLETON:  No, sir.

4            THE COURT:  Ms. Gooch?

5            DEFENDANT GOOCH:  No, sir.

6            THE COURT:  Ms. Bolding?

7            DEFENDANT BOLDING:  No, sir.

8            THE COURT:  Mr. Dominguez?

9            DEFENDANT DOMINGUEZ:  No, sir.

10           THE COURT:  And, Mr. Montalvo?

11           DEFENDANT MONTALVO-GUZMAN:  No.

12           THE COURT:  Are any of you currently under the

13   influence of any drug, alcohol, or medication that's

14   currently affecting your ability to understand why you're

15   here in court?  Mr. Ornelas?

16           DEFENDANT ORNELAS:  No, sir.

17           THE COURT:  Mr. Buckner?

18           DEFENDANT BUCKNER:  No, sir.

19           THE COURT:  Mr. James?

20           DEFENDANT JAMES:  No, sir.

21           THE COURT:  Mr. Freeman?

22           DEFENDANT FREEMAN:  No, sir.

23           THE COURT:  Mr. Tighe?

24           DEFENDANT TIGHE:  No, sir.

25           THE COURT:  Mr. Middleton?
```

1    DEFENDANT MIDDLETON:  No, sir.

2    THE COURT:  Ms. Gooch?

3    DEFENDANT GOOCH:  No, sir.

4    THE COURT:  Ms. Bolding?

5    DEFENDANT BOLDING:  No, sir.

6    THE COURT:  Mr. Dominguez?

7    DEFENDANT DOMINGUEZ:  No, sir.

8    THE COURT:  And, Mr. Montalvo?

9    DEFENDANT MONTALVO-GUZMAN:  No, sir.

10    THE COURT:  Thank you.

11    Counsel, have each of you had a sufficient

12   opportunity to confer with your clients to determine

13   whether or not they're competent?  And by competent, I

14   mean they possess both a factual as well as a rational

15   understanding these proceedings.

16    Mr. Peterson?

17    MR. PETERSON:  I have, your Honor.  I believe

18   he's competent.

19    THE COURT:  Thank you.

20    Mr. Young?

21    MR. YOUNG:  I have, your Honor.  I think that

22   he's competent.

23    THE COURT:  All right.  Thank you.

24    Mr. Hunt?

25    MR. HUNT:  Yes, your Honor.  I believe Mr. James

1    is competent.

2              THE COURT:  Thank you.

3              Mr. Crawford?

4              MR. CRAWFORD:  Yes, your Honor.  My client is

5    competent.

6              THE COURT:  Thank you.

7              Ms. Diaz?

8              MS. DIAZ:  Yes, your Honor.  I believe Mr.

9    Tighe's competent.

10             THE COURT:  Thank you.

11             Mr. MacLemore?

12             MR. GUESS:  Yes, sir.  I believe that Mr.

13   Middleton is competent.

14             THE COURT:  Thank you.

15             Mr. McClinton?

16             MR. MCCLINTON:  Yes, your Honor.  I believe Ms.

17   Gooch is competent.

18             THE COURT:  Thank you.

19             Mr. Bullajian?

20             MR. BULLAJIAN:  I have and I do believe Ms.

21   Bolding is competent.

22             THE COURT:  Thank you.

23             Mr. Boyd?

24             MR. BOYD:  Your Honor, I have and I believe Mr.

25   Dominguez is competent.

1        THE COURT:  Thank you.

2        Mr. Martinez?

3        MR. MARTINEZ:  I have, your Honor, and I believe

4   Mr. Montalvo-Guzman is competent.

5        THE COURT:  All right.  Ms. Smith-Burris, I see

6   that there are two plea agreements before the court this

7   morning.  First, in the matter of Mr. Ornelas and then,

8   Mr. James.  If you could please summarize the terms and

9   conditions of those agreements and confirm those are the

10  only two plea agreements.

11       MS. SMITH-BURRIS:  That is correct, your Honor.

12  Those are the only two.

13       THE COURT:  All right.  Excellent.

14       MS. SMITH-BURRIS:  As to Jeremy Leon Ornelas, the

15  defendant has agreed to enter a plea of guilty to the

16  indictment on file against him.  The United States

17  Attorney agrees to refrain from prosecuting this defendant

18  for any other Title 18, United States Code violations of

19  which the United States is now aware.  The defendant

20  understands that as a part of this plea agreement, he is

21  waiving his right to appeal subject to the limitations as

22  set out in the written plea agreement.

23       The defendant understands that he will be ordered

24  to pay restitution and that that liability shall be joint

25  and several with that of any other defendant who's been

ordered or will be ordered to make restitution for the

offenses in this matter. The defendant understands that

the written plea agreement, which does include the factual

basis, is the entire agreement between the defendant, his

counsel, and the United States.

THE COURT: Is that a fair and accurate summary,

Mr. Peterson?

MR. PETERSON: It is, your Honor.

THE COURT: And, Mr. Ornelas, do you accept and

approve of it?

DEFENDANT ORNELAS: Yes, sir.

THE COURT: Thank you.

Moving now to Mr. James.

MS. SMITH-BURRIS: As to William Ryan James, the

defendant has agreed to enter a plea of guilty to Count 2

of the indictment on file against him. In exchange, the

United States agrees to dismiss any remaining charges

against the defendant at the time of sentencing. The

United States Attorney agrees to refrain from prosecuting

this defendant for any other Title 18, United States Code

violations of which the United States is now aware.

The defendant does understand that as a part of

this plea agreement, he is waiving his right to appeal

subject to the limitations as set out in the written plea

agreement. And the plea agreement on file, which does

1 include the factual basis, is the entire agreement between

2 the defendant, his counsel, and the United States.

3        THE COURT:  All right.  Mr. Hunt, is that a fair

4 and accurate summary?

5        MR. HUNT:  Yes, your Honor.

6        THE COURT:  Mr. James, do you accept and approve

7 of it?

8        DEFENDANT JAMES:  Yes, sir.

9        THE COURT:  And, Mr. James, and, Mr. Ornelas,

10 have each of you read and reviewed each paragraph of the

11 plea agreement that have been entered into between

12 yourself and the United States?  Have you, Mr. Ornelas?

13        DEFENDANT ORNELAS:  Yes, sir.

14        THE COURT:  Have you, Mr. James?

15        DEFENDANT JAMES:  Yes, sir.

16        THE COURT:  And do either of you gentlemen have

17 any questions regarding any of the terms or provisions of

18 that agreement?  Mr. Ornelas?

19        DEFENDANT ORNELAS:  No, sir.

20        THE COURT:  Mr. James?

21        DEFENDANT JAMES:  No, sir.

22        THE COURT:  And do each of you understand that

23 pursuant to that agreement, you're both waiving your right

24 to appeal any sentence that you may receive or for any

25 other matter, except for those very limited circumstances

1 set forth in that agreement?  Mr. Ornelas?

2          DEFENDANT ORNELAS:  Yes, sir.

3          THE COURT:  Mr. James?

4          DEFENDANT JAMES:  Yes, sir.

5          THE COURT:  And finally, in your case, Mr.

6 Ornelas, do you understand that restitution is going to be

7 ordered to be made to any identifiable victims that

8 sustained any loss in this matter pursuant to that plea

9 agreement?  Do you, likewise, understand that?

10          DEFENDANT ORNELAS:  Yes, sir.

11          THE COURT:  Any questions about that?

12          DEFENDANT ORNELAS:  No, sir.

13          THE COURT:  All right.  Very good.  Thank you.

14          Mr. Ornelas, you're charged with a violation of

15 Title 18, United States Code, section 1028(f) and (a)(7)

16 and (b)(1)(D), conspiracy to commit identity theft.  That

17 is a 15-year maximum term of imprisonment, a $250,000

18 maximum fine, a $100 mandatory special assessment, and a

19 three-year term of supervised release.

20          Do you understand the charge and range of

21 punishment?

22          DEFENDANT ORNELAS:  Yes, sir.

23          THE COURT:  Supervised release is a potential

24 punishment in everyone's case.  That is a period of time

25 served after any jail sentence.  It has conditions you

have to comply with.  It involves reporting to a probation

officer.  Most important thing I can tell you about

supervised release is, if you mess up, violate any of its

conditions, it can be revoked, and you could end up going

back to jail potentially for up to the number of years for

which you're placed on supervised release.

        In the matter of Mr. Dominguez and Mr. Montalvo,

your supervised release will be of a non-reporting variety

meaning that after you complete whatever sentence you are

sentenced to in the United States jail, if you're

ultimately deported, then the special condition would be

that you not return to the United States absent the

appropriate permissions.

        If you were to do so, then your term of

supervised release could be revoked, you could go back to

jail for up to a year, and then, you could also be charged

at that point with a new illegal reentry offense, this

time, after having previously been convicted of a felony,

and that carries up to 10 years in the United States jail

prior to deportation.

        Does everyone understand how supervised release

works?  Mr. Ornelas, do you?

        DEFENDANT ORNELAS:  Yes, sir.

        THE COURT:  Mr. Buckner?

        DEFENDANT BUCKNER:  Yes, sir.

THE COURT:  Mr. James?

DEFENDANT JAMES:  Yes, sir.

THE COURT:  Mr. Freeman?

DEFENDANT FREEMAN:  Yes, sir.

THE COURT:  Mr. Tighe?

DEFENDANT TIGHE:  Yes, sir.

THE COURT:  Mr. Middleton?

DEFENDANT MIDDLETON:  Yes, sir.

THE COURT:  Ms. Gooch?

DEFENDANT GOOCH:  Yes, sir.

THE COURT:  Ms. Bolding?

DEFENDANT BOLDING:  Yes, sir.

THE COURT:  Mr. Dominguez?

DEFENDANT DOMINGUEZ:  Yes, sir.

THE COURT:  And, Mr. Montalvo?

DEFENDANT MONTALVO-GUZMAN:  Yes, sir.

THE COURT:  All right.  Very good.

Mr. Buckner, and, Mr. Tighe, each of you are charged with a violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2), being in possession of a firearm by one previously convicted of a felony.

That carries a 10-year maximum term of imprisonment, a $250,000 maximum fine, a $100 mandatory special assessment that goes to the Crime Victims Fund, and then, a three-year term of supervised release.

1          Mr. Buckner, do you understand the charge against

2    you and the range of punishment?

3          DEFENDANT BUCKNER:  Yes, sir.

4          THE COURT:  All right.  Thank you.

5          Mr. James, and, Mr. Tighe, each of you have a

6    count of possession of a stolen firearm and aiding and

7    abetting someone in the commission of that offense, in

8    violation of 18 U.S.C. 922(j) and 924(a)(2), and Title 18,

9    United States Code, Section 2.

10         Likewise, that carries a 10-year maximum term of

11   imprisonment, a $250,000 maximum fine, the $100 mandatory

12   special assessment, and up to a three-year term of

13   supervised release.

14         Mr. James, do you understand the charge and range

15   of punishment?

16         DEFENDANT JAMES:  Yes, sir.

17         THE COURT:  All right.  Mr. Freeman, and, Mr.

18   Tighe, each of you also have a count of conspiracy to

19   possess stolen firearms, in violation of Title 18, United

20   States Code, Section 371, 922(j) and 924(a)(2).

21         That offense carries a five-year maximum term of

22   imprisonment, a $250,000 maximum fine, a $100 mandatory

23   special assessment, and a three-year term of supervised

24   release.

25         Mr. Freeman, do you understand the one charge

1 against you and the range of punishment?

2 DEFENDANT FREEMAN: Yes, sir.

3 THE COURT: And, Mr. Tighe, do you understand all

4 three of the charges and the range of punishment for each?

5 DEFENDANT TIGHE: Yes, sir.

6 THE COURT: All right. Very good.

7 Mr. Middleton, you, too, are facing a possession

8 of a stolen firearm charge, in violation of 18 U.S.C.

9 922(j) and 924(a)(2), 10-year maximum term of

10 imprisonment, $250,000 maximum fine, $100 mandatory

11 special assessment, and a three-year term of supervised

12 release.

13 Do you understand the charge and range of

14 punishment, sir?

15 DEFENDANT MIDDLETON: Yes, sir.

16 THE COURT: All right. Ms. Gooch, you are

17 charged with the distribution of methamphetamine, a

18 Schedule II controlled substance, in violation of 21

19 U.S.C. 841(a)(1) and (b)(1)(C).

20 That carries a 20-year maximum term of

21 imprisonment, a $1 million maximum fine, a $100 mandatory

22 special assessment, and a three-year term of supervised

23 release.

24 Do you understand the charge and range of

25 punishment, Ms. Gooch?

1          DEFENDANT GOOCH:  Yes, sir.

2          THE COURT:  All right.  Ms. Bolding, you're

3    charged with a violation of 21 U.S.C. 846, 841(a)(1) and

4    (b)(1)(B)(viii), conspiracy to possess with intent to

5    distribute at least 500 grams of methamphetamine, a

6    Schedule II controlled substance.

7          Ma'am, that does carry a mandatory minimum

8    10-year sentence, up to a maximum of a lifetime in prison.

9    It does carry a $10 million maximum fine, a $100 mandatory

10   special assessment, and a five-year minimum term of

11   supervised release.

12         Do you understand the charge and range of

13   punishment?

14         DEFENDANT BOLDING:  Yes, sir.

15         THE COURT:  All right.  Mr. Dominguez, and, Mr.

16   Montalvo, each of you are charged with violation of Title

17   8, United States Code, Section 1326(a), the illegal

18   reentry into the United States.

19         That carries up to two years in a United States

20   jail prior to deportation, a $250,000 maximum fine, a $100

21   mandatory special assessment, followed by the one year

22   term of non-reporting supervised release.

23         Mr. Dominguez, do you understand the charge and

24   range of punishment?

25         DEFENDANT DOMINGUEZ:  Yes, sir.

1          THE COURT:  Mr. Montalvo?

2          DEFENDANT MONTALVO-GUZMAN:  Yes.

3          THE COURT:  All right.  Mr. Ornelas, in the plea

4     agreement, the indictment is incorporated in its entirety,

5     setting forth the charge.

6          Have you gone over and discussed that formal

7     charging instrument, the indictment with Mr. Peterson?

8          DEFENDANT ORNELAS:  Yes, sir.

9          THE COURT:  You do have the right to have that

10    read aloud in open court to make certain you understand

11    the charge.

12         Would you like to have that read aloud, or do you

13    waive a reading?

14         DEFENDANT ORNELAS:  Waive.

15         THE COURT:  All right, then.  As to the offense

16    of conspiracy to commit identity theft, how do you plead,

17    sir, guilty or not guilty?

18         DEFENDANT ORNELAS:  Guilty.

19         THE COURT:  All right.  Thank you.

20         Set forth in the plea agreement, specifically on

21    page 3, beginning with paragraph 6 and continuing all the

22    way through page 7 to paragraph 7, the government

23    summarizes what they would prove beyond a reasonable doubt

24    if your case were to proceed to trial.

25         Have you read that and gone over it with Mr.

1  Peterson?

2          DEFENDANT ORNELAS:  Yes, sir.

3          THE COURT:  Do you agree that's a true and

4  accurate summary of what you did?

5          DEFENDANT ORNELAS:  Yes, sir.

6          THE COURT:  And is that what you're pleading

7  guilty to?

8          DEFENDANT ORNELAS:  Yes.

9          THE COURT:  You, too, have the right to have that

10 factual basis read allowed to make certain that you have

11 no objection.

12         But since you've agreed it's a true and accurate

13 summary, would you like to waive a reading or have it read

14 aloud?

15         DEFENDANT ORNELAS:  I'll waive.

16         THE COURT:  All right.  Very good, sir.

17         All right.  Mr. Buckner, in your matter, I'm

18 going to ask the government to set forth the indictment.

19         MS. SMITH-BURRIS:  The grand jury charges on or

20 about January the 6th, 2020, in the Western District of

21 Texas, the defendant, Stevie Defrando Buckner, Jr., being

22 a person who knew he had been previously convicted of at

23 least one of the following crimes, punishable by

24 imprisonment for a term exceeding one year, to-wit:

25         On April the 5th of 2011, Stevie Defrando

1  Buckner, Jr. was convicted of engaging in organized

2  criminal activity in the 264th Judicial District Court of

3  Bell County, Texas, in Cause No. 55670;

4          And on February the 6th of 2015, Stevie Buckner,

5  Jr. was convicted of possession of a controlled substance

6  under one gram in the 264th Judicial District Court of

7  Bell County, Texas, in Cause No. 73504;

8          And did knowingly possess the following firearm,

9  to-wit: a Smith & Wesson M&P Shield firearm with a serial

10  number of HDH7744; said firearm having moved in commerce

11  and affecting commerce, in violation of Title 18, United

12  States Code, Sections 922(g)(1) and 924(a)(2).

13          THE COURT:  Mr. Buckner, do you understand the

14  charge set forth in the indictment and read here in open

15  court?

16          DEFENDANT BUCKNER:  Yes.

17          THE COURT:  Do you have any questions regarding

18  what you're charged with or the range of punishment?

19          DEFENDANT BUCKNER:  No.

20          THE COURT:  As to the offense of possession of a

21  firearm by one previously convicted of a felony, how do

22  you plead, sir, guilty or not guilty?

23          DEFENDANT BUCKNER:  Guilty.

24          THE COURT:  Thank you, sir.

25          Filed on February 24th of this year is document

1   No. 21, entitled Factual Basis.  It's where the government

2   summarized what they'd prove in your case beyond a

3   reasonable doubt if it went to trial.

4           Have you read it?

5           DEFENDANT BUCKNER:  Yes, sir.

6           THE COURT:  Do you agree what's set forth in that

7   document -- is that a true and accurate summary of what

8   you did, sir?

9           DEFENDANT BUCKNER:  Yes, sir.

10          THE COURT:  And is that what you're pleading

11  guilty to?

12          DEFENDANT BUCKNER:  Yes.

13          THE COURT:  Would you like to waive a reading, or

14  would you like me to have that read aloud?

15          DEFENDANT BUCKNER:  Waive.

16          THE COURT:  Waive?  Thank you, sir.

17          All right.  Moving now to the matter of Mr.

18  James, sir, I note that in your case, the plea agreement

19  does set forth the indictment in its entirety.

20          Do you understand what you're charged with, sir,

21  and the range of punishment?

22          DEFENDANT JAMES:  Yes, sir.

23          THE COURT:  Would you like to have that

24  indictment read aloud, or would you waive a reading?

25          DEFENDANT JAMES:  Waive a reading.

1    THE COURT:  All right, then.  As to the offense

2 of possession of a stolen firearm and aiding and abetting

3 someone in the commission of that offense, how do you

4 plead, sir, guilty or not guilty?

5    DEFENDANT JAMES:  Guilty, sir.

6    THE COURT:  Thank you.

7    I do note in your case, the plea agreement,

8 paragraph 6, beginning on page 3 continuing through page 5

9 up to paragraph 7, the government summarizes what they'd

10 prove beyond a reasonable doubt if your case went to

11 trial.

12    Did you read that portion of the agreement, sir?

13    DEFENDANT JAMES:  Yes, sir.

14    THE COURT:  And do you agree that's a true and

15 accurate summary of what you did?

16    DEFENDANT JAMES:  Yes, sir.

17    THE COURT:  And is that what you're pleading

18 guilty to?

19    DEFENDANT JAMES:  Yes, sir.

20    THE COURT:  Would you like me to have the

21 government read that?  Or do you waive a reading of the

22 factual basis?

23    DEFENDANT JAMES:  I waive the reading.

24    THE COURT:  Very good.  Thank you, sir.

25    All right.  Mr. Freeman, I'm going to ask the

1 government to set forth the indictment in your case.

2 　　　　MS. SMITH-BURRIS:  Your Honor, the indictment

3 also includes Mr. Tighe.  Would the Court prefer me to go

4 ahead and read the counts associated with each of them?

5 　　　　THE COURT:  Yes, please.

6 　　　　MS. SMITH-BURRIS:  The grand jury charges Count

7 1, the conspiracy and its objects.  From on or about June

8 the 7th of 2019 through at least June 25th, 2019, the

9 exact dates unknown to the grand jury, in the Western

10 District of Texas and elsewhere, the defendants, Lucas

11 James Tighe, Trent Michael Freeman, did knowingly and

12 willfully combine, conspire and agree together, and with

13 each other, and others both known and unknown to the grand

14 jury, to commit an offense against the United States,

15 to-wit: to receive, possess, conceal, store, barter, sell

16 and dispose of any stolen firearm which had been shipped

17 and transported in interstate and foreign commerce before

18 it was stolen, knowing and having reasonable cause to

19 believe that the firearm was stolen, contrary to Title 18,

20 United States, Sections 922(j) and 924(a)(2).  It was part

21 of the conspiracy that the defendants would dispose of the

22 following stolen firearms in exchange for cash and/or

23 controlled substances:

24 　　　　An H&R Model 999, .22 caliber nine-shot pistol

25 with the serial number of AX015098; a Smith & Wesson,

1  Model 686-1, .357 caliber mag stainless firearm with a

2  serial number of AWL7747; a Weatherby bolt action, 300

3  Weatherby mag with a scope, with a serial number of

4  VS34979; a Remington bolt action, Model 700 ADL, seven

5  millimeter with a scope, with a serial number of C6444109;

6  a Remington bolt action, Model 700 ADL, caliber 270 with a

7  scope, with a serial number of C6210543; a Savage bolt

8  action, caliber 22-250 with a scope, with the serial

9  number of H285768; a Remington pump shotgun, Model 870

10  Youth Express, 20 gauge, with a serial number of

11  RS29888-N; a Mossberg, Model Maverick 88 pump, 12-gauge

12  shotgun, with a serial number of MV32509-E.

13          In furtherance of the conspiracy and to effect

14  the objects of the conspiracy, the following overt acts,

15  among others, were committed in the Western District of

16  Texas and elsewhere:

17          On or about June 13th of 2019, in the Western

18  District of Texas, the defendants, Lucas James Tighe,

19  William Ryan James and Rosa Lee Kolar, burglarized a home

20  and stole firearms.

21          On or about June 15th of 2019, in the Western

22  District of Texas, the defendant, Lucas James Tighe,

23  contacted Defendant Kandace Shanell Benningfield.  On or

24  about June the 16th of 2019, in the Northern District of

25  Texas, Defendants Lucas James Tighe, William Ryan James

transported firearms to Defendants Kandace Shanell

Benningfield and Trent Michael Freeman.

On or about June 17th of 2019, in the Northern

District of Texas, the defendant, Trent Michael Freeman,

pawned a firearm; and on or about June 20th, 2019, in the

Northern District of Texas, the defendant, Trent Michael

Freeman, pawned a firearm.

Count 2.  On or about June 13th, 2019, in the

Western District of Texas, the defendant, Lucas James

Tighe, aided and abetted by others, did knowingly possess

at least one of the aforementioned stolen firearms that I

just read aloud in the count previous to this, which had

been shipped and transported in interstate or foreign

commerce before being stolen, knowing and having

reasonable cause to believe that the said firearm was

stolen, in violation of Title 18, United States Code,

Sections 922(j) and 924(a)(2).

Count 3, on or about June 13, 2019, in the

Western District of Texas, the defendant, Lucas James

Tighe, being a person who knew he had been previously

convicted of the following crimes, punishable by

imprisonment for a term exceeding one year, to-wit:

On November the 10th, 2014, Lucas Tighe was

convicted of unlawful possession of a firearm by a felon

in the 19th Judicial District Court of McLennan County,

1  Texas, in Cause No. 2014-1163-C1;

2  Also, on November 10th, 2014, Lucas Tighe was

3  convicted of possession of a controlled substance, to-wit:

4  methamphetamine in the 19th Judicial District Court of

5  McLennan County, Texas, in Cause No. 20-14-1429-C1;

6  And did knowingly possess one of the following

7  firearms as outlined in Count 1 the indictment, the

8  said firearms having moved in commerce and affecting

9  commerce, all in violation of Title 18, United States

10  Code, Sections 922(g)(1) and 924(a)(2).

11  THE COURT:  All right.  Mr. Freeman, and, Mr.

12  Tighe, do each of you understand the charges set forth in

13  your respective indictments and read here in open court?

14  Mr. Freeman?

15  DEFENDANT FREEMAN:  Yes, sir.

16  THE COURT:  Mr. Tighe?

17  DEFENDANT TIGHE:  Yes, sir.

18  THE COURT:  Do either of you two gentlemen have

19  any questions regarding what you're charged with or the

20  range of punishment?  Mr. Freeman?

21  DEFENDANT FREEMAN:  No, sir.

22  THE COURT:  Mr. Tighe?

23  DEFENDANT TIGHE:  No, sir.

24  THE COURT:  All right.  Mr. Freeman, as to the

25  offense of conspiracy to possess stolen firearms as set

1    forth in the indictment, how do you plead, sir, guilty or

2    not guilty?

3           DEFENDANT FREEMAN:  Guilty, sir.

4           THE COURT:  Thank you, sir.

5           And document No. 97, filed February 24th of this

6    year, the government summarizes what they'd prove beyond a

7    reasonable doubt if your case went to trial.

8           Did you read this document, sir?

9           DEFENDANT FREEMAN:  Yes, sir, I did.

10          THE COURT:  Do you agree it's a true and accurate

11    summary of what you did?

12          DEFENDANT FREEMAN:  Yes, sir, it is.

13          THE COURT:  And what's set forth in document No.

14    97, is that what you're pleading guilty to, sir?

15          DEFENDANT FREEMAN:  Yes, sir.

16          THE COURT:  Would you like me to have this

17    document read aloud, or do you waive a reading?

18          DEFENDANT FREEMAN:  I waive the reading.

19          THE COURT:  Thank you, sir.

20          Mr. Tighe, do you have any questions regarding

21    what you're charged with or the range of punishment for

22    any of the three counts?

23          DEFENDANT TIGHE:  No, sir.

24          THE COURT:  All right.  As to Count 1, conspiracy

25    to possess stolen firearms, how do you plead, sir, guilty

1  or not guilty?

2        DEFENDANT TIGHE:  Guilty.

3        THE COURT:  And as to Count 2, being in

4  possession of a stolen firearm and aiding and abetting

5  someone in the commission of that offense, how do you

6  plead, sir?

7        DEFENDANT TIGHE:  Guilty.

8        THE COURT:  And as to Count 3, being in

9  possession of a firearm by one previously convicted of a

10 felony, how do you plead, sir, guilty or not guilty?

11       DEFENDANT TIGHE:  Guilty.

12       THE COURT:  All right.  Thank you.

13       In your case, document No. 96, filed on February

14 24th of 2020, the government summarizes what they'd prove

15 beyond a reasonable doubt if your case went to trial.

16       Did you read document No. 96?

17       DEFENDANT TIGHE:  Yes, sir, I did.

18       THE COURT:  Do you agree what's set forth in that

19 document is a true and accurate summary of what you did?

20       DEFENDANT TIGHE:  Yes, I did.

21       THE COURT:  And is that what you're pleading

22 guilty to, sir?

23       DEFENDANT TIGHE:  Yeah.

24       THE COURT:  Would you like to have that document

25 read aloud, or do you waive a reading?

1        DEFENDANT TIGHE:  Waive the reading.

2        THE COURT:  Thank you, sir.

3        All right.  Moving to Mr. Middleton, if you'll

4   set forth the indictment.

5        MS. SMITH-BURRIS:  Your Honor, this is a

6   superseding indictment that does include the notice of

7   government's demand for forfeiture.

8        The grand jury charges:  On or about November 14,

9   2018, in the Western District of Texas, the defendant,

10  Gary Dalton Middleton, did knowingly possess the following

11  stolen firearm, to-wit: a Ruger, Model P89DC,

12  nine-millimeter pistol, with the Serial No. 302-86290,

13  which had been shipped and transported in interstate or

14  foreign commerce before being stolen, knowing and having

15  reasonable cause to believe that the said firearm was

16  stolen, in violation of Title 18, United States Code,

17  Section 922(j) and 924(a)(2).

18        As a result of the criminal violations set forth

19  in Count 1 of the superseding indictment, the United

20  States hereby gives notice that it intends to forfeit but

21  is not limited to the below-described property from the

22  defendant.  He shall forfeit all right, title and interest

23  in the below-described property to the United States as

24  made applicable to criminal forfeiture by Title 28, United

25  States Code, Section 2461(c).

        THE COURT:  All right.  Mr. Middleton, do you understand the charge as set forth in the indictment and read here in open court?

        DEFENDANT MIDDLETON:  Yes, sir.

        THE COURT:  Do you also understand that the government is seeking to have you forfeit and seize the various property contained in the notice of forfeiture?

        DEFENDANT MIDDLETON:  Yes, sir.

        THE COURT:  Do you have any questions regarding the charge, the range of punishment, or the notice of forfeiture?

        DEFENDANT MIDDLETON:  No, sir.

        THE COURT:  As to the offense of being in possession of a stolen firearm or firearms, how do you plead, guilty or not guilty?

        DEFENDANT MIDDLETON:  Guilty.

        THE COURT:  Thank you.

        In your case, document No. 30 is an amended factual basis, filed March 2nd, just yesterday.

        Have you had an opportunity to review that with Mr. MacLemore?

        DEFENDANT MIDDLETON:  Yes, sir.

        THE COURT:  Do you agree that's a true and accurate summary of what you did?

        DEFENDANT MIDDLETON:  Yes, sir.

1          THE COURT:  And what's set forth in document No.

2    30, is that what you're pleading guilty to?

3          MR. MACLEMORE:  Judge, the only exceptions would

4    be there are some allegations in the factual basis

5    regarding the number of firearms involved, and a burglary,

6    and the size of magazines associated with some of those

7    firearms.  We wouldn't necessarily agree to those, but we

8    would agree with everything else, including possession of

9    the firearm listed in the indictment.

10         THE COURT:  All right.  So noted.

11         Would you like to have the amended factual basis

12   read aloud, or do you waive a reading, Mr. Middleton?

13         DEFENDANT MIDDLETON:  I'll waive.

14         THE COURT:  All right.  Thank you.

15         Moving now to Ms. Gooch, if you'll please set

16   forth the indictment.

17         MS. SMITH-BURRIS:  The grand jury charges on or

18   about March 30th, 2017, in the Western District of Texas,

19   the defendant, Cassie Frances Gooch, unlawfully, knowingly

20   and intentionally distributed a controlled substance,

21   which offense involved a mixture or substance containing a

22   detectable amount of methamphetamine, a Schedule II

23   controlled substance, in violation of Title 21, United

24   States Code, Sections 841(a)(1) and 841(b)(1)(C).

25         THE COURT:  Ms. Gooch, do you understand the

1  charge set forth in the indictment and read here in open

2  court?

3         DEFENDANT GOOCH:  Yes, sir.

4         THE COURT:  Any questions regarding what you're

5  charged with or the range of punishment?

6         DEFENDANT GOOCH:  No, sir.

7         THE COURT:  As to the offense of distribution of

8  methamphetamine, a Schedule II controlled substance, how

9  do you plead, ma'am, guilty or not guilty?

10        DEFENDANT GOOCH:  Guilty.

11        THE COURT:  Thank you, ma'am.

12        In your case, document No. 26, filed yesterday,

13 March 2nd, the government summarized what they'd prove

14 beyond a reasonable doubt if your case went to trial.

15        Have you read that?

16        DEFENDANT GOOCH:  Yes, sir.

17        THE COURT:  Do you agree it's a true and accurate

18 summary of what you did?

19        DEFENDANT GOOCH:  Yes, sir.

20        THE COURT:  And what's set forth in document No.

21 26, is that what you're pleading guilty?

22        DEFENDANT GOOCH:  Yes, sir.

23        THE COURT:  Would you like me to have that read

24 aloud, or do you waive a reading?

25        DEFENDANT GOOCH:  I can waive the reading.

1    THE COURT:  All right.  Thank you, ma'am.

2    Moving now to Ms. Bolding, if you'll set forth

3  the indictment.

4    MS. SMITH-BURRIS:  The grand jury charges:

5  Beginning in or about September 2018, the exact date

6  unknown to the grand jury, and continuing until the

7  present time, in the Western District of Texas and

8  elsewhere, the defendant, Carline Stone Bolding, did

9  unlawfully, knowingly and intentionally combine, conspire

10  confederate, and agree together, and with each other and

11  others to the grand jury known and unknown, to commit

12  offenses against the United States, in violation of Title

13  21, United States Code Section 846.  That is to say, they

14  conspired to possess with the intent to distribute at

15  least 500 grams of a mixture or substance containing a

16  detectable amount of methamphetamine, a Schedule II

17  controlled substance, contrary to Title 21, United States

18  Code, Section 841(a)(1).

19    The quantity of the mixture or substance

20  containing methamphetamine involved in the conspiracy and

21  attributable to the defendant as a result of this

22  defendant's own conduct and as a result of the conduct of

23  any other coconspirators reasonably foreseeable to the

24  defendant is as follows.

25    As to Carline Stone Bolding, at least 500 grams,

1  in violation of Title 21, United States Code, Section

2  841(b)(1)(A)(viii), and all in violation of Title 21,

3  United States Code, Section 846.

4          THE COURT:  Ms. Bolding, do you understand the

5  charge set forth in the indictment and read here in open

6  court?

7          DEFENDANT BOLDING:  Yes, sir.

8          THE COURT:  Do you have any questions regarding

9  what you're charged with or the range of punishment?

10          DEFENDANT BOLDING:  No, sir.

11          THE COURT:  As to the offense of conspiracy to

12  possess with intent to distribute at least 500 grams of

13  methamphetamine, a Schedule II controlled substance, how

14  do you plead, ma'am, guilty or not guilty?

15          DEFENDANT BOLDING:  Guilty.

16          THE COURT:  Thank you, ma'am.

17          Document No. 239, filed yesterday, is a six-page

18  document where the government summarizes what they'd prove

19  beyond a reasonable doubt if your case went to trial.

20          Have you read this, ma'am?

21          DEFENDANT BOLDING:  Yes, sir.

22          THE COURT:  Do you agree that's a true and

23  accurate summary of what you did?

24          DEFENDANT BOLDING:  Yes.

25          THE COURT:  And is document 239 what you're

1   pleading guilty to?

2          DEFENDANT BOLDING:  Yes, sir.

3          THE COURT:  All right.  Would you like to have

4   that read aloud, or do you waive a reading?

5          DEFENDANT BOLDING:  I waive the reading, sir.

6          THE COURT:  Thank you, ma'am.

7          If you'll set forth the indictment in the matter

8   of Mr. Dominguez.

9          MR. BULLAJIAN:  Your Honor, if I -- I'm sorry to

10  interrupt.  Ms. --

11         THE COURT:  It's your job.

12         MR. BULLAJIAN:  Ms. Bolding has indicated she has

13  some back pain.  Would it be okay with the Court if she

14  pull up a chair so she could sit?

15         THE COURT:  I have no objection.

16         DEFENDANT BOLDING:  Thank you, sir.

17         THE COURT:  All right.  For Mr. Dominguez.

18         MS. SMITH-BURRIS:  The grand jury charges:  On or

19  about January the 1st, 2020, in the Western District of

20  Texas, the defendant, Abdiel Dominguez, an alien,

21  attempted to enter, entered, and was found in the United

22  States, having previously been denied admission, excluded,

23  deported and removed from the United States on or about

24  August the 23rd, 2019, and the defendant has not received

25  the consent of the Attorney General of the United States

or his successor, the Secretary of the Department of
Homeland Security, to reapply for admission to the United
States, in violation of Title 8, United States Code,
Sections 1326(a) and Title 6, United States Code, Sections
202(3), 202(4) and 557.

THE COURT: Mr. Dominguez, do you understand the
charge set forth in the indictment and read here in open
court?

DEFENDANT DOMINGUEZ: Yes, sir.

THE COURT: Any questions regarding what you're
charged with or the range of punishment?

DEFENDANT DOMINGUEZ: No, sir.

THE COURT: As to the offense of illegal reentry
into the United States, how do you plead, sir, guilty or
not guilty?

DEFENDANT DOMINGUEZ: Guilty, sir.

THE COURT: Thank you.

What, in summary, would the government prove if
this case were to proceed to trial?

MS. SMITH-BURRIS: On January the 1st, 2020, the
defendant was found in the Western District of Texas. He
is a native and citizen of the Republic of Mexico and has
no status to be in the United States legally. He'd been
previously removed on August the 23rd, 2019 and has not
received consent to reapply for admission to the United

1  States.

2       THE COURT:  Is that what you did, sir?

3       DEFENDANT DOMINGUEZ:  Yes, sir.

4       THE COURT:  Is that what you're pleading guilty

5  to?

6       DEFENDANT DOMINGUEZ:  Yes, sir.

7       THE COURT:  Thank you, sir.

8       Moving now to Mr. Montalvo-Guzman.

9       MS. SMITH-BURRIS:  The grand jury charges:  On or

10 about January 21st, 2019, in the Western District of

11 Texas, the defendant, Luis Montalvo-Guzman, an alien,

12 attempted to enter, entered, and was found in the United

13 States, having previously been denied admission, excluded,

14 deported and removed from the United States on or about

15 May 31st, 2010, and the defendant had not received the

16 consent of the Attorney General of the United States or

17 his successor, the Secretary of the Department of Homeland

18 Security, to reapply for admission to the United States in

19 violation of Title 8, United States Code, Sections

20 1326(a), and Title 6, United States Code, Sections 202(3),

21 202(4) and 557.

22       THE COURT:  Mr. Montalvo, do you understand the

23 charge set forth in the indictment and read here in open

24 court?

25       DEFENDANT MONTALVO-GUZMAN:  Yes.

1          THE COURT:  Any questions regarding what you're

2     charged with or the range of punishment?

3          DEFENDANT MONTALVO-GUZMAN:  No.

4          THE COURT:  As to the offense of illegal reentry

5     into the United States, how do you plead, sir, guilty or

6     not guilty?

7          DEFENDANT MONTALVO-GUZMAN:  Guilty.

8          THE COURT:  What, in summary, would the

9     government prove if this case were to proceed to trial?

10          MS. SMITH-BURRIS:  On January 21st, 2019, the

11     defendant was found in the Western District of Texas.  He

12     is a native and citizen of the Republic of Mexico and has

13     no status to be in the United States legally.  He'd been

14     previously removed on May 31st, 2010 and has not received

15     consent to reapply for admission to the United States.

16          THE COURT:  Is that what you did, sir?

17          DEFENDANT MONTALVO-GUZMAN:  Yes.

18          THE COURT:  Is that what you're pleading guilty

19     to?

20          DEFENDANT MONTALVO-GUZMAN:  Yes.

21          THE COURT:  All right.  Folks, at this time, I

22     have a long list of questions to ask you.  I'll ask you as

23     a group and call on you individually for your answers.

24          Are each of you pleading guilty freely and

25     voluntarily?  Mr. Ornelas?

1      DEFENDANT ORNELAS:  Yes, sir.

2      THE COURT:  Mr. Buckner?

3      DEFENDANT BUCKNER:  Yes, sir.

4      THE COURT:  Mr. James?

5      DEFENDANT JAMES:  Yes, sir.

6      THE COURT:  Mr. Freeman?

7      DEFENDANT FREEMAN:  Yes, sir.

8      THE COURT:  Mr. Tighe?

9      DEFENDANT TIGHE:  Yes, sir.

10      THE COURT:  Mr. Middleton?

11      DEFENDANT MIDDLETON:  Yes, sir.

12      THE COURT:  Ms. Gooch?

13      DEFENDANT GOOCH:  Yes, sir.

14      THE COURT:  Ms. Bolding?

15      DEFENDANT BOLDING:  Yes, sir.

16      THE COURT:  Mr. Dominguez?

17      DEFENDANT DOMINGUEZ:  Yes, sir.

18      THE COURT:  And, Mr. Montalvo?

19      DEFENDANT MONTALVO-GUZMAN:  Yes.

20      THE COURT:  Are each of you pleading guilty

21  because you are guilty and for no other reason?  Mr.

22  Ornelas?

23      DEFENDANT ORNELAS:  Yes, sir.

24      THE COURT:  Mr. Buckner?

25      DEFENDANT BUCKNER:  Yes, sir.

1          THE COURT:  Mr. James?

2          DEFENDANT JAMES:  Yes, sir.

3          THE COURT:  Mr. Freeman?

4          DEFENDANT FREEMAN:  Yes, sir.

5          THE COURT:  Mr. Tighe?

6          DEFENDANT TIGHE:  Yes, sir.

7          THE COURT:  Mr. Middleton?

8          DEFENDANT MIDDLETON:  Yes, sir.

9          THE COURT:  Ms. Gooch?

10         DEFENDANT GOOCH:  Yes, sir.

11         THE COURT:  Ms. Bolding?

12         DEFENDANT BOLDING:  Yes, sir.

13         THE COURT:  Mr. Dominguez?

14         DEFENDANT DOMINGUEZ:  Yes, sir.

15         THE COURT:  And, Mr. Montalvo?

16         DEFENDANT MONTALVO-GUZMAN:  Yes.

17         THE COURT:  Other than the plea agreement in the

18    matter of Mr. James and Mr. Ornelas, has anyone made a

19    promise to any of you all that have caused you to plead

20    guilty?  Mr. Ornelas?

21         DEFENDANT ORNELAS:  No, sir.

22         THE COURT:  Mr. Buckner?

23         DEFENDANT BUCKNER:  No, sir.

24         THE COURT:  Mr. James?

25         DEFENDANT JAMES:  No, sir.

1    THE COURT:  Mr. Freeman?

2    DEFENDANT FREEMAN:  No, sir.

3    THE COURT:  Mr. Tighe?

4    DEFENDANT TIGHE:  No, sir.

5    THE COURT:  Mr. Middleton?

6    DEFENDANT MIDDLETON:  No, sir.

7    THE COURT:  Ms. Gooch?

8    DEFENDANT GOOCH:  No, sir.

9    THE COURT:  Ms. Bolding?

10   DEFENDANT BOLDING:  No, sir.

11   THE COURT:  Mr. Dominguez?

12   DEFENDANT DOMINGUEZ:  No, sir.

13   THE COURT:  Mr. Montalvo?

14   DEFENDANT MONTALVO-GUZMAN:  No.

15   THE COURT:  Has anyone threatened you, coerced

16   you, or forced you in any way into pleading guilty?  Mr.

17   Ornelas?

18   DEFENDANT ORNELAS:  No, sir.

19   THE COURT:  Mr. Buckner?

20   DEFENDANT BUCKNER:  No, sir.

21   THE COURT:  Mr. James?

22   DEFENDANT JAMES:  No, sir.

23   THE COURT:  Mr. Freeman?

24   DEFENDANT FREEMAN:  No, sir.

25   THE COURT:  Mr. Tighe?

1    DEFENDANT TIGHE:  No, sir.

2    THE COURT:  Mr. Middleton?

3    DEFENDANT MIDDLETON:  No, sir.

4    THE COURT:  Ms. Gooch?

5    DEFENDANT GOOCH:  No, sir.

6    THE COURT:  Ms. Bolding?

7    DEFENDANT BOLDING:  No, sir.

8    THE COURT:  Mr. Dominguez?

9    DEFENDANT DOMINGUEZ:  No, sir.

10   THE COURT:  And, Mr. Montalvo?

11   DEFENDANT MONTALVO-GUZMAN:  No, sir.

12   THE COURT:  Do each of you understand that you

13   have the right to plead not guilty to these charges?  Mr.

14   Ornelas?

15   DEFENDANT ORNELAS:  Yes, sir.

16   THE COURT:  Mr. Buckner?

17   DEFENDANT BUCKNER:  Yes, sir.

18   THE COURT:  Mr. James?

19   DEFENDANT JAMES:  Yes, sir.

20   THE COURT:  Mr. Freeman?

21   DEFENDANT FREEMAN:  Yes, sir.

22   THE COURT:  Mr. Tighe?

23   DEFENDANT TIGHE:  Yes, sir.

24   THE COURT:  Mr. Middleton?

25   DEFENDANT MIDDLETON:  Yes, sir.

1    THE COURT:  Ms. Gooch?

2    DEFENDANT GOOCH:  Yes, sir.

3    THE COURT:  Ms. Bolding?

4    DEFENDANT BOLDING:  Yes, sir.

5    THE COURT:  Mr. Dominguez?

6    DEFENDANT DOMINGUEZ:  Yes, sir.

7    THE COURT:  And, Mr. Montalvo?

8    DEFENDANT MONTALVO-GUZMAN:  Yes.

9    THE COURT:  Have each of you had enough time to

10   visit and talk with your lawyers about these charges and

11   any possible defenses that you might have?  Mr. Ornelas,

12   have you?

13   DEFENDANT ORNELAS:  Yes, sir.

14   THE COURT:  Mr. Buckner?

15   DEFENDANT BUCKNER:  Yes, sir.

16   THE COURT:  Mr. James?

17   DEFENDANT JAMES:  Yes, sir.

18   THE COURT:  Mr. Freeman?

19   DEFENDANT FREEMAN:  Yes, sir.

20   THE COURT:  Mr. Tighe?

21   DEFENDANT TIGHE:  Yes, sir.

22   THE COURT:  Mr. Middleton?

23   DEFENDANT MIDDLETON:  Yes, sir.

24   THE COURT:  Ms. Gooch?

25   DEFENDANT GOOCH:  Yes, sir.

1    THE COURT:  Ms. Bolding?

2    DEFENDANT BOLDING:  Yes, sir.

3    THE COURT:  Mr. Dominguez?

4    DEFENDANT DOMINGUEZ:  Yes, sir.

5    THE COURT:  And, Mr. Montalvo?

6    DEFENDANT MONTALVO-GUZMAN:  Yes.

7    THE COURT:  All right.  Mr. Ornelas, are you

8  satisfied with the job Mr. Peterson has done as your

9  attorney?

10    DEFENDANT ORNELAS:  Yes, sir.

11    THE COURT:  Any complaints regarding his

12  representation of any type?

13    DEFENDANT ORNELAS:  No, sir.

14    THE COURT:  Mr. Buckner, are you satisfied with

15  the job Mr. Young has done as your attorney?

16    DEFENDANT BUCKNER:  Yes, sir.

17    THE COURT:  Any complaints regarding his

18  representation of any type?

19    DEFENDANT BUCKNER:  No, sir.

20    THE COURT:  Thank you.

21    Mr. James, are you satisfied with the job Mr.

22  Hunt has done as your attorney?

23    DEFENDANT JAMES:  Yes, sir.

24    THE COURT:  Any complaints regarding his

25  representation?

1        DEFENDANT JAMES:  No, sir.

2        THE COURT:  Thank you.

3        Mr. Freeman, are you, likewise, satisfied with

4   the job Mr. Crawford has done as your attorney?

5        DEFENDANT FREEMAN:  Yes, sir.

6        THE COURT:  Any complaints regarding his

7   representation?

8        DEFENDANT FREEMAN:  No, sir.

9        THE COURT:  Mr. Tighe, are you satisfied with the

10  job Ms. Diaz has done as your lawyer?

11       DEFENDANT TIGHE:  Yes, sir.

12       THE COURT:  Any complaints regarding her

13  representation of any type?

14       DEFENDANT TIGHE:  No.

15       THE COURT:  All right.  Mr. Middleton, are you

16  satisfied with the job Mr. MacLemore has done as your

17  attorney?

18       DEFENDANT MIDDLETON:  Yes, sir.

19       THE COURT:  Any complaints regarding his

20  representation?

21       DEFENDANT MIDDLETON:  No, sir.

22       THE COURT:  Ms. Gooch, are you satisfied with the

23  job Mr. McClinton has done as your attorney?

24       DEFENDANT GOOCH:  Yes, sir.

25       THE COURT:  Any complaints regarding his

1  representation?

2      DEFENDANT GOOCH:  No, sir.

3      THE COURT:  Ms. Bolding, are you satisfied with

4  the job Mr. Bullajian has done as your lawyer?

5      DEFENDANT BOLDING:  Yes, sir.

6      THE COURT:  Any complaints regarding his

7  representation?

8      DEFENDANT BOLDING:  No, sir.

9      THE COURT:  Thank you.

10      Mr. Dominguez, are you satisfied with the job Mr.

11  Boyd has done as your attorney?

12      DEFENDANT DOMINGUEZ:  Yes, sir.

13      THE COURT:  Any complaints regarding his

14  representation?

15      DEFENDANT DOMINGUEZ:  No, sir.

16      THE COURT:  Thank you.

17      Mr. Montalvo, are you satisfied with the job Mr.

18  Martinez has done as your attorney?

19      DEFENDANT MONTALVO-GUZMAN:  Yes.

20      THE COURT:  Any complaints regarding his

21  representation?

22      DEFENDANT MONTALVO-GUZMAN:  No.

23      THE COURT:  All right.  Mr. Dominguez, and, Mr.

24  Montalvo, because you're both alleged to be citizens of

25  another country, I do need to advise you that there may be

immigration-related consequences if you are found guilty
of this offense, such as you could be excluded, deported,
denaturalized, or have denial of naturalization in your
particular cases.

Do each of you understand the possible
immigration-related consequences of being found guilty of
this offense?  Mr. Dominguez?

DEFENDANT DOMINGUEZ:  Yes, sir.

THE COURT:  Mr. Montalvo?

DEFENDANT MONTALVO-GUZMAN:  Yes.

THE COURT:  And have each of you had an
opportunity to review and discuss those
immigration-related consequences with your attorney?  Mr.
Dominguez?

DEFENDANT DOMINGUEZ:  Yes, sir.

THE COURT:  Mr. Montalvo?

DEFENDANT MONTALVO-GUZMAN:  Yes.

THE COURT:  Do either of you have any questions
regarding the immigration-related consequences of being
found guilty?  Mr. Dominguez?

DEFENDANT DOMINGUEZ:  No, sir.

THE COURT:  Mr. Montalvo?

DEFENDANT MONTALVO-GUZMAN:  No.

THE COURT:  To everyone else, the offense to
which you're pleading guilty is a felony, and if you are

1  found guilty of this offense, you could lose certain

2  valuable civil rights that you have, like the right to

3  vote, the right to sit on a jury, the right to possess a

4  firearm as well as the right to run for public office.

5  Additionally, you could lose government employment and

6  certain government benefits that you may possess.

7  Additionally, you could also lose various licenses if you

8  have any that you currently possess.

9          Do each of you understand the possible

10 consequences of being found guilty of a felony-level

11 offense?  Mr. Ornelas?

12         DEFENDANT ORNELAS:  Yes, sir.

13         THE COURT:  Mr. Buckner?

14         DEFENDANT BUCKNER:  Yes, sir.

15         THE COURT:  Mr. James?

16         DEFENDANT JAMES:  Yes, sir.

17         THE COURT:  Mr. Freeman?

18         DEFENDANT FREEMAN:  Yes, sir.

19         THE COURT:  Mr. Tighe?

20         DEFENDANT TIGHE:  Yes, sir.

21         THE COURT:  Mr. Middleton?

22         DEFENDANT MIDDLETON:  Yes, sir.

23         THE COURT:  Ms. Gooch?

24         DEFENDANT GOOCH:  Yes, sir.

25         THE COURT:  And, Ms. Bolding?

1          DEFENDANT BOLDING:  Yes, sir.

2          THE COURT:  All of you are entitled to a trial by

3    jury.  You're presumed to be innocent.  The government

4    does have the burden of proving you guilty beyond a

5    reasonable doubt.  None of you would ever have to prove

6    your own innocence.  At your trial, your attorneys will

7    have the right to cross-examine, ask questions of any

8    witnesses that the government were to call to testify

9    against you.

10          Also at trial, you can get up here on the witness

11   stands, testify on your own behalf, tell your side of the

12   story.  On the other hand, you don't have to say or do

13   anything.  And the fact that you choose to not put on any

14   type of defense or offer any type of evidence on your

15   behalf cannot be used against you in determining whether

16   or not you're guilty.

17          You have the right to be represented by an

18   attorney throughout these proceedings, including any

19   appeal.  Additionally, the testimony that you're giving

20   here today is subject to the penalties of perjury, meaning

21   if you haven't been truthful with what you're testifying

22   to here before the Court, you could be prosecuted for that

23   offense, which carries jail time and a fine.

24          If you continue with your plea of guilty, then

25   you're going to waive your right to a trial by jury as

1  well as all the other rights that I have explained to you.

2  Let me talk to you a little bit about punishment in all

3  these cases.  All of your cases are going to be referred

4  to the probation department for preparation of a

5  presentence report.  That is a document prepared by a

6  probation officer based in part upon an interview with

7  each of you.

8        During that interview, the probation officer is

9  going to ask you for your version of this particular

10  offense; also talk to you about your current and past

11  physical and mental health, your family background, your

12  employment history and your criminal history, if any.  You

13  are entitled and encouraged to have your attorney with you

14  during that interview.

15        Additionally, you'll have an opportunity to read

16  that presentence report prior to sentencing.  And your

17  lawyer is going to have an opportunity to make formal

18  legal objections to anything they believe is legally

19  inappropriate that's contained in that document.  You'll

20  also be able to let the judge at sentencing know if there

21  are any mistakes or mischaracterizations that are found in

22  that document.

23        Ultimately, the most important part of a

24  presentence report is the recommendation under the federal

25  sentencing guidelines as to what an appropriate punishment

 1   in your case might be.  That's expressed in a range of

 2   months.  You could receive a sentence less than that

 3   recommended sentence, or it could be higher than that

 4   recommended sentence.  But in no event can you be

 5   sentenced to more time than is the maximum for the

 6   particular offense or the combined offenses in the case of

 7   Mr. Tighe.

 8        Let me tell you how that guideline sentence is

 9   generally computed or arrived at.  The offense to which

10   you're pleading guilty, it's assigned an offense level.

11   It can be increased if the Court attributes what's called

12   relevant conduct to you.  Your lawyer will be able to let

13   you know, after review of the presentence report, whether

14   or not that's something that's likely to apply in your

15   case.

16        The offense level could also be reduced slightly

17   if the sentencing judge decides to give you credit for

18   what's called acceptance of responsibility.  The guideline

19   range is also dramatically affected by your criminal

20   history.  If you have a low Criminal History Category I,

21   it's going to be a lower sentence than someone who has

22   potentially the same offense but a Criminal History

23   Category of VI.  That is the highest level potentially.

24        Do each of you understand at least in general

25   terms how that presentence report process and the

1 guidelines work?  Do you, Mr. Ornelas?

2          DEFENDANT ORNELAS:  Yes, sir.

3          THE COURT:  Mr. Buckner?

4          DEFENDANT BUCKNER:  Yes, sir.

5          THE COURT:  Mr. James?

6          DEFENDANT JAMES:  Yes, sir.

7          THE COURT:  Mr. Freeman?

8          DEFENDANT FREEMAN:  Yes, sir.

9          THE COURT:  Mr. Tighe?

10         DEFENDANT TIGHE:  Yes, sir.

11         THE COURT:  Mr. Middleton?

12         DEFENDANT MIDDLETON:  Yes, sir.

13         THE COURT:  Ms. Gooch?

14         DEFENDANT GOOCH:  Yes, sir.

15         THE COURT:  Ms. Bolding?

16         DEFENDANT BOLDING:  Yes, sir.

17         THE COURT:  Mr. Dominguez?

18         DEFENDANT DOMINGUEZ:  Yes, sir.

19         THE COURT:  And, Mr. Montalvo?

20         DEFENDANT MONTALVO-GUZMAN:  Yes.

21         THE COURT:  Let me ask ou:  Have each of you had

22 an opportunity to visit with your lawyers regarding their

23 best educated guess as to what the guideline range in your

24 case might be?  And I understand they haven't had a chance

25 to see the presentence report yet.  Mr. Ornelas, has your

lawyer done that?

DEFENDANT ORNELAS:  Yes, sir.

THE COURT:  Mr. Buckner?

DEFENDANT BUCKNER:  Yes, sir.

THE COURT:  Mr. James?

DEFENDANT JAMES:  Yes, sir.

THE COURT:  Mr. Freeman?

DEFENDANT FREEMAN:  Yes, sir.

THE COURT:  Mr. Tighe?

DEFENDANT TIGHE:  Yes, sir.

THE COURT:  Mr. Middleton?

DEFENDANT MIDDLETON:  Yes, sir.

THE COURT:  Ms. Gooch?

DEFENDANT GOOCH:  Yes, sir.

THE COURT:  Ms. Bolding?

DEFENDANT BOLDING:  Yes, sir.

THE COURT:  Mr. Dominguez?

DEFENDANT DOMINGUEZ:  Yes, sir.

THE COURT:  And, Mr. Montalvo?

DEFENDANT MONTALVO-GUZMAN:  Yes, sir.

THE COURT:  Let me advise you, that is just a guess.  It is not binding on the sentencing judge in any way, whatever your defense attorney told you.

Do you understand that, Mr. Ornelas?

DEFENDANT ORNELAS:  Yes, sir.

1          THE COURT:  Mr. Buckner?

2          DEFENDANT BUCKNER:  Yes, sir.

3          THE COURT:  Mr. James?

4          DEFENDANT JAMES:  Yes, sir.

5          THE COURT:  Mr. Freeman?

6          DEFENDANT FREEMAN:  Yes, sir.

7          THE COURT:  Mr. Tighe?

8          DEFENDANT TIGHE:  Yes, sir.

9          THE COURT:  Mr. Middleton?

10         DEFENDANT MIDDLETON:  Yes, sir.

11         THE COURT:  Ms. Gooch?

12         DEFENDANT GOOCH:  Yes, sir.

13         THE COURT:  Ms. Bolding?

14         DEFENDANT BOLDING:  Yes, sir.

15         THE COURT:  Mr. Dominguez?

16         DEFENDANT DOMINGUEZ:  Yes, sir.

17         THE COURT:  And, finally, Mr. Montalvo?

18         DEFENDANT MONTALVO-GUZMAN:  Yes.

19         THE COURT:  All right.  At the end this hearing,

20   I'm going to prepare what's called a report and

21   recommendation to the sentencing judge.  In that document,

22   I'm going to recommend that he accept the plea agreements

23   in the matter of Mr. James and Mr. Ornelas;

24         And further, that he find that each of your pleas

25   of guilty are freely and voluntarily made; that you

understand the nature of the charges and penalties; that
you understand your constitutional and statutory rights
and desire to waive them; that all of you are competent to
enter the plea; that you're all satisfied with your
attorney's representation; and based upon what I've either
read or heard here in open court, that there is a
sufficient factual basis to be able to support your plea.

I'm, therefore, going to recommend to him that he
accept all of your pleas of guilty and find you guilty of
the offense or offenses to which you've pled guilty here
today.

Do all of you understand your rights as I've
explained them to you?  Mr. Ornelas?

DEFENDANT ORNELAS:  Yes, sir.

THE COURT:  Mr. Buckner?

DEFENDANT BUCKNER:  Yes, sir.

THE COURT:  Mr. James?

DEFENDANT JAMES:  Yes, sir.

THE COURT:  Mr. Freeman?

DEFENDANT FREEMAN:  Yes, sir.

THE COURT:  Mr. Tighe?

DEFENDANT TIGHE:  Yes, sir.

THE COURT:  Mr. Middleton?

DEFENDANT MIDDLETON:  Yes, sir.

THE COURT:  Ms. Gooch?

1     DEFENDANT GOOCH:  Yes, sir.

2     THE COURT:  Ms. Bolding?

3     DEFENDANT BOLDING:  Yes, sir.

4     THE COURT:  Mr. Dominguez?

5     DEFENDANT DOMINGUEZ:  Yes, sir.

6     THE COURT:  Mr. Montalvo?

7     DEFENDANT MONTALVO-GUZMAN:  Yes.

8     THE COURT:  Do all of you want to continue with

9  your plea of guilty and waive your right to a trial by

10 jury?  Mr. Ornelas?

11    DEFENDANT ORNELAS:  Yes, sir.

12    THE COURT:  Mr. Buckner?

13    DEFENDANT BUCKNER:  Yes, sir.

14    THE COURT:  Mr. James?

15    DEFENDANT JAMES:  Yes, sir.

16    THE COURT:  Mr. Freeman?

17    DEFENDANT FREEMAN:  Yes, sir.

18    THE COURT:  Mr. Tighe?

19    DEFENDANT TIGHE:  Yes, sir.

20    THE COURT:  Mr. Middleton?

21    DEFENDANT MIDDLETON:  Yes, sir.

22    THE COURT:  Ms. Gooch?

23    DEFENDANT GOOCH:  Yes, sir.

24    THE COURT:  Ms. Bolding?

25    DEFENDANT BOLDING:  Yes, sir.

1          THE COURT:  Mr. Dominguez?

2          DEFENDANT DOMINGUEZ:  Yes, sir.

3          THE COURT:  And, Mr. Montalvo?

4          DEFENDANT MONTALVO-GUZMAN:  Yes.

5          THE COURT:  All right.  I will then recommend to

6    the district judge that he accept all of your pleas of

7    guilty.

8          Is there any objection to Mr. Freeman, Mr.

9    Middleton, Ms. Gooch and Ms. Bolding being continued on

10   bond pending further sentencing?

11         MS. SMITH-BURRIS:  No objection, your Honor.

12         THE COURT:  All right.  It's so ordered.

13         Is there anything further from counsel?

14         MS. SMITH-BURRIS:  Not from the government.

15         THE COURT:  All right.  Thank you all for your

16   patience.

17         (Proceedings conclude at 10:23 a.m.)

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING WAS TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE TIME OF THE AFORESAID PROCEEDINGS AND IS A CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, MADE FROM THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, AND THAT THE TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE PRESCRIBED BY THE COURT AND JUDICIAL CONFERENCE OF THE UNITED STATES, ON THIS 18th DAY OF SEPTEMBER, 2022.

*Lily Iva Reznik*

~~~~~~~~~~~~~~~~~~~~~~~~
*LILY I. REZNIK, CRR, RMR*
*Official Court Reporter*
*United States District Court*
*Austin Division*
*501 West 5th Street, Suite 4153*
*Austin, Texas 78701*
*(512)391-8792*
*SOT Certification No. 4481*
*Expires: 1-31-23*